LEMASTER, Respondent, v. THE SOUTHERN MISSOURI RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, January 22, 1907.

1. **PRACTICE: Failure of Proof.** Where a petition alleged that the plaintiff was employed by defendant to bore a well not less than two hundred nor more than four hundred feet, that defendant was to furnish casing, that when plaintiff had bored to the depth of two hundred and sixty-three feet he was notified by the defendant to cease work because the well was of sufficient depth, and asked judgment for compensation for the number of feet dug at the contract price, for certain expenses incurred which the defendant was to pay and for casing furnished by the plaintiff, and the evidence of the plaintiff showed that he ceased work either because the defendant refused to furnish casing or bcause the defendant failed to test the water supply there was a failure of proof in its entire scope and meaning under section 798, Revised Statutes 1899.

2. ———: ———: **Instruction.** In such case an instruction authorizing a recovery if the jury found the casing became necessary and the defendant refused to furnish it for an unreasonable time, was erroneous because not responsive to the issues and because it ignored another reason advanced by plaintiff for failure

to go on, that the defendant had not tested the water. An instruction for defendant directing a verdict for defendant unless the jury found that the plaintiff quit drilling because the defendant notified him the well was deep enough, was improperly refused.

Appeal from Ste. Genevieve Circuit Court. — *Hon. Charles L. Killian*, Judge.

REVERSED AND REMANDED.

*F. M. Trissal* and *C. J. Stanton* for appellant.

(1) Defendant's demurrer to the testimony introduced by plaintiff should have been sustained. The petition alleges that plaintiff had completed the well to the satisfaction of the defendant. The testimony shows beyond question that plaintiff had not completed the well and had never been notified by defendant to quit work, consequently plaintiff failed to show a compliance with his contract, or that defendant was wholly at fault. There is a clear variance between the pleadings and the proof. If plaintiff is entitled to recover at all, it is upon *quantum meruit* and not upon the express contract. Kansas City ex rel. v. Walsh, 88 Mo. App. 277; Mohney v. Reed, 40 Mo. App. 99; Eyerman v. Mt. Sinai Cemetery Assn., 61 Mo. 489; Halpin Mfg. Co. v. School Dist., 54 Mo. App. 371; Freeman v. Aylor, 62 Mo. App. 613; Fitzgerald v. Hayward, 50 Mo. 516. (2) If by any act of defendant, plaintiff was prevented or incapacitated from performing his contract, such act or acts of defendant should have been pleaded by plaintiff. Marsh v. Richards, 29 Mo. 104; Dempsey v. Lawson, 76 Mo. App. 522; Squire v. Hiem Brewing Co., 90 Mo. App. 462; McCullom v. Niagara Fire Ins. Co., 61 Mo. App. 356.

*H. B. Irwin* and *T. B. Whitledge* for respondent.

(1) Plaintiff performed each and every stipulation in his contract with defendant and sued only for

the actual contract price of the work performed and material furnished, hence he should recover. Eyerman v. Cem. Association, 61 Mo. 489; Yates v. Ballentine, 56 Mo. 530. The party receiving a benefit must respond in compensation. Thompson v. Allsman, 7 Mo. 530; Dutro v. Walter, 31 Mo. 516; Williams v. Porter, 51 Mo. 441; Lee v. Ashbrook, 14 Mo. 105. (2) The testimony shows the defendant railway company told plaintiff to stop boring when he had gone a few feet in the stratum of sand; that plaintiff LeMaster tendered a further performance of the contract, and was prevented making a further performance of the contract by the failure of the defendant company to furnish casing, hence he should recover. Berthold v. St. L. E. C. Co., 165 Mo. 280; Keith v. Ridge, 146 Mo. 97; More v. Mfg. Co., 113 Mo. 107; Globe Co. v. Doud, 47 Mo. App. 439; Rude v. Mitchel, 97 Mo. 365.

GOODE, J.—Plaintiff's action is founded on the following contract:

"DeSoto, Mo., June 8, 1903.

"I hereby propose to drill a well eight inches in diameter, on the right of way of the So. Mo. Ry. near Esther, Mo. according to the following specifications: Price per foot $2.25, depth 400 feet, if so required by the company, or any other depth not exceeding 400 feet, nor less than 200 feet; same to be decided by the company. Company to furnish necessary casing and coal and to pay freight on drill outfit from DeSoto to work and return. Work to be pushed rapidly, and company to pay for completed hole only to any depth between 200 and 400 feet as chosen by the railway company, and no abandoned holes to be paid for.

"L. L. LeMaster,
Contractor.

"C. A. Sheppard,
"For So. Mo. Ry. Co."

The petition states the execution in writing of the foregoing agreement and that plaintiff agreed to drill a well for defendant pursuant to it; the well to be eight inches in diameter and not less than two hundred nor more than four hundred feet deep, at the option of defendant; that in consideration of the drilling aforesaid, defendant agreed to pay plaintiff $2.25 for every foot drilled, furnish all necessary casing for the well, pay for the coal consumed by the engine during the drilling and pay the freight on the drilling outfit from DeSoto to Esther and return; that plaintiff shipped his drilling machinery to Esther, entered on the performance of the work and drilled a well to the depth of 263 feet when he was notified by defendant to cease work as the well had reached a depth suitable for the purposes of defendant. Plaintiff furnished casing to the amount of sixteen dollars, for which defendant refused to pay plaintiff and also refused to pay for the work done or the freight on his machinery from DeSoto to Ether; wherefore defendant is said to be indebted to plaintiff in a total distributed as follows:

"Drilling the well .......... ....$607.75
Freight on machinery .... .... 65.00
Casing furnished .. ...... .. 16.00."

Judgment was prayed for the indebtedness. The answer was a general denial. Under the instructions given by the court the jury returned a verdict in plaintiff's favor, assessing his damages at $607.75. Judgment having been entered for that sum, defendant appealed.

The judgment in this case canot be upheld for the reason that the cause of action stated in the petition was unproved in its entire scope and meaning. [R. S. 1899, sec. 798.] It not only was unproved, but was disproved by the evidence of the plaintiff himself and of other witnesses. The record shows a total failure of proof, not a variance, either material or immaterial. Plaintiff's

case as stated in the petition, is that after he had drilled to the depth of 263 feet, he was notified by defendant to cease drilling as the well had reached a depth suitable for defendant's purpose and as deep as it required. Plaintiff's version of the facts is that when he had bored to the depth mentioned, he was working in a layer of sandstone. Above the sandstone was a layer of soapstone which he had succeeded in boring through, but while boring in the sandstone the soapstone above worked around his bit or drill, a metal instrument about seven feet long, and clamped it so that it stuck fast in the hole. Defendant was to furnish casing for the hole, and after drilling through the soapstone, in order to prevent the filling of the hole above the bit, plaintiff requested casing of defendant's engineer who was supervising the work. Meanwhile plaintiff furnished ten or twelve feet of casing himself. Instead of getting the requested casing, the engineer suggested that a test of the hole be made by pumping, to ascertain if a supply of water could be obtained from it at its present depth. A steam pump was to be sent by defendant to make the test. With affairs in this posture, nothing more was done for nearly six weeks, during which interval the bit still remained in the hole. At the end of that interval it was extracted. Plaintiff swore he notified defendant that the drill was out of the hole and further swore that he was then ready to proceed with the work. But within a week he moved his drilling machinery to Farmington, Missouri, to carry out a contract he had made to drill a well there. Plaintiff's testimony is ambiguous as to whether the cause of his doing no more work after extracting the bit from the hole was, that defendant did not furnish casing, or its failure to test the water supply which could be obtained from the hole at the depth already reached. From his own testimony it is certain that unless a sufficient water supply could be obtained, defendant would not have accepted the well as it was.

Defendant's witnesses testified the pump to make the test was sent and the test actually made, with the result that no adequate supply of water was available. Not an inkling of testimony was given by plaintiff, or any one else, that he was notified to cease drilling because the company did not want the well to go deeper. In other words, there is no evidence to support this allegation of the petition, which is of the essence of the case. The case stated was not kept in mind in instructing the jury. Instructions given for the plaintiff authorized a verdict in his favor if it became necessary to use casing in digging the well and the defendant failed or refused for an unreasonable length of time to furnish casing; that is to say, the court advised the jury that such failure on the part of defendant justified plaintiff in abandoning the work, although water had not been obtained or the hole bored four hundred feet, or plaintiff ordered to stop. Not only did this instruction lose sight of the case alleged in the petition, but it assumed that plaintiff's reason for going no further with the work was defendant's failure to furnish casing; whereas, plaintiff's evidence is just as consistent with the theory that he quit because he had waited a reasonable time for defendant to test the well and no test had been made. He swore positively he never was informed by defendant's engineer, or any one else, that its depth was sufficient and he need not go any deeper. He was asked how he came to quit boring and gave this rather vague answer: "For the purpose of making a test and then in cleaning out the well; and, as stated before, after I had gotten into the sandstone the tools filled up in the soapstone and it caved in back of me, and I was five or six weeks with the tools in the well in that condition; and after I had gotten my tools out, my machine remained there over a week to the knowledge of the railroad company, or one of their representatives; that pumping apparatus never arrived." He testified further that he was directed to

stop drilling in order that a test might be made and could have gone further if he had wished. After testifying as above, he swore he could not have gone on without casing and was ready to proceed if casing had been furnished. It will be perceived that though plaintiff testified to two reasons for quitting work, neither was the one alleged in his pleading. Defendant's counsel requested an instruction, the effect of which was to require proof from plaintiff, as a condition precedent to a verdict for him, that he quit drilling because defendant notified him the well was deep enough; in other words, to prove his allegation. This request was refused and erroneously. [Farmers Bank v. Assurance Co., 106 Mo. App. 114, 80 S. W. 299; Laclede Const. Co. v. Iron Works, 169 Mo. 137, 69 S. W. 384.]

The judgment is reversed and the cause remanded. All concur.